### GREGORY LORDI v. STATE.

No. A-7210. Opinion Filed April 19, 1930.
(287 Pac. 1083.)

Joe A. Brown and Monk & McSherry, for plaintiff in error.

The Attorney General and Smith C. Matson, Asst. Atty. Gen., for the State.

CHAPPELL, J.   The plaintiff in error, hereinafter called defendant, was convicted in the district court of Pittsburg county of the crime of receiving stolen property and sentenced to serve a term of six months in the state penitentiary, and to pay a fine of $250.

The record discloses that the Choctaw Portland Cement Company had gone into bankruptcy, and that one Blanton Woodward was the custodian of the physical properties of the company located in Pittsburg county. During the month of March, 1928, considerable property was stolen from the premises of the cement company and sold to this defendant, who was a junk dealer in the town of Hartshorne.   In this case the defendant is charged with receiving copper wire of a value in excess of $20 from Esau

Wolf and Joe Galoski. The facts and circumstances in evidence show that Wolf and Galoski stole this copper wire from the plant of the cement company above referred to and took it to Hartshorne, where it was bought by this defendant for $16, he knowing that the property had been stolen by these parties at the time he received it. It further appears that the defendant had recently bought other stolen property from Wolf and Galoski and one Fred Hendershot, and that he knew each time he bought the property that it had been stolen by these parties.

The defendant assigns several grounds for the reversal of this judgment, the first of which is that the court erred in permitting the state to introduce evidence of prior purchases of babbitt, brass, and valves, bought by this defendant from Fred Hendershot. Defendant claimed that there was no proof that these articles were stolen goods or had any connection with the wire alleged to have been received by this defendant from Wolf and Galoski, as charged in the information. At the time he was arrested defendant was taken to the office of the county attorney and there signed a statement which amounts to an admission of his guilt of this offense. In this signed statement the defendant admitted that he had bought a large amount of junk from Hendershot, including babbitt, brass valves, and property of that character, that finally he gave these parties a key to his place of business and they brought the stuff in the night-time, and defendant said he was suspicious because they brought it there in the night, said that it was getting too strong for him because he knew it was coming from the cement plant. This statement, when properly identified, was introduced in evidence by the state.

The general rule of evidence in instances of this kind is that proof may be made of the buying and receiving of

other stolen property by the defendant both prior and subsequent to the time alleged that he received the stolen property charged against him, if the reception of the other stolen property is not too remote in point of time, in order to show guilty knowledge and intent in the reception of stolen property for which he is being tried. Wharton's Criminal Law, 11 Ed. 1448-49 (V. 2) ; 16 C. J. Page 610; Ruling Case Law, vol. 17, p. 88.

This evidence may also be received to show a plan or scheme or system by which defendant was generally receiving stolen property in the conduct of his business, for the purpose of establishing probable guilty knowledge that the property in question had been stolen. State v. Rule, 11 Okla. Cr. 237, 144 Pac. 807; Jackson v. State, 42 Okla. Cr. 86, 274 Pac. 696; Zeligson v. State, 43 Okla. Cr. 24, 276 Pac. 791.

The record discloses a system or scheme on the part of this defendant to purchase stolen property in a wholesale way; the character of the property and the conditon of the same at the time defendant purchased it should have led any person who was sufficiently on guard against buying stolen property to believe that property of this character, in the condition in which defendant purchased it, would not be for sale, except by some person who had stolen it. The admissions of the defendant and the facts and circumstances proved by the state laid a sufficient predicate to permit the state to introduce in evidence instances of receiving stolen property by this defendant from persons other than those charged in the information about the time that he received this stolen property.

The defendant next contends that the trial court erred in giving instruction No. 5. When this instruction was prepared, the learned trial court no doubt had in mind the cases of Webb v. State, 19 Okla. Cr. 450, 200 Pac. 719, and

Weaver v. State, 30 Okla. Cr. 309, 235 Pac. 635, and in the preparation of the instruction sought to correctly advise the jury of the quantum of proof required in cases of this kind. This instruction fairly states the law as applied to the facts in the case.

It is next contended that the trial court erred in overruling the demurrer to the evidence. In this connection it is contended that the failure of the state to introduce Exhibits A and B in evidence was a confession that the state was unable to show that the wire, upon which it pitched its whole case, had ever been bought, received, had, or possessed by the defendant. Exhibits A and B were two gunny sacks of wire that were delivered to the sheriff by one Gladstein, a junk dealer in McAlester, who had purchased the same from the defendant.

When the state offered these exhibits in evidence, the court, out of the abundance of its precaution, sustained the objection of the defendant and refused to permit the state to introduce these exhibits in evidence. The exhibits were sufficiently identified, and a proper predicate had been laid for their introduction, and the error committed by the court was in favor of and not against the defendant. These exhibits were not necessary to the conviction, for the oral testimony of witnesses independent of and without the introduction of the exhibits showed conclusively that the defendant bought and received certain stolen copper wire from Wolf and Galoski as charged in the information, knowing the same to have been stolen at the time he received it. Whether exhibits marked A and B were this particular property or not was not essential to the defendant's conviction, provided there was other proof of the material elements of the offense. The corpus delicti having been properly established, it was not necessary that the state should introduce these exhibits to make its case.

The defendant next contends that the trial court erred in refusing to give certain requested instructions. An examination of these instructions discloses that they did not fairly state the law as applicable to the facts in the case, and were therefore properly refused. Instruction No. 2 was to the effect that the actual title of the property must be vested in the person named in the information. Under the holdings of this court the actual condition of the legal title is immaterial to the thief. Little v. State, 21 Okla. Cr. 1, 204 Pac. 305; Dickson v. State, 28 Okla. Cr. 378, 231 Pac. 315; Carson v. State, 30 Okla. Cr. 438, 236 Pac. 627; Zeligson v. State, 42 Okla. Cr. 24, 276 Pac. 791. An examination of the instructions given by the court on its own motion fairly state the law of the case and were sufficient.

The defendant previous to the trial had voluntarily made admissions sufficient to establish his guilt, and these admissions were in evidence. Apparently he was using his place of business as a fence for known thieves who were stealing property in that community. The nature of the property received from Wolf and Galoski and the manner in which defendant received it are circumstances sufficient of themselves to show that he must have had guilty knowledge of the fact that the goods he was receiving from them were stolen goods. His entire conduct indicates a guilty knowledge and a perfect willingness to aid and abet these thieves in the disposition of this property.

The punishment given the defendant was extremely light, considering the magnitude and extent of his criminal operations. The state having established the guilt of the defendant beyond a reasonable doubt, and the errors of law complained of not being fundamental, the cause is affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.